Kenneth **WING**, Plaintiff,

and

Eddie **Sneed,** husband; Emma **Sneed,** wife; Nicholas **Riggio,** husband; Luello **Riggio,** wife; Carol **Merz;** Orlin **Johnson;** Patricia **Johnson,** wife; Lyle **Hardin,** Husband; Patricia **Hardin,** wife; Burton **Fisher;** Mary **Elliser;** John **De Lano;** Donald **Branin,** husband; Linda **Branin,** wife, individually and on behalf of all others similarly situated; Richard **Hamm;** Kristine **Anderson;** David **Murphy;** Robert **Zerbel,** individually and on behalf of all others similarly situated; Town of **Ruston, WA;** Floyd **Seher;** Mary Ann **Seher;** Mary **Chouinard;** Frank **Gilletti;** Michelle D. **Gilletti;** Carol **Hamilton;** Robert D. **Gallagher;** Owen **Gallagher;** Georgann **Gallagher;** Daniel **Gallagher;** Diana **Gallagher;** Marjorie **McMenamin;** Ruth **Johnson;** Philemena **Capozzola;** Tony **Isozaki;** Sumiko **Isozaki;** Teresa **Nguyen;** James Thomas **Little;** William W. **Westerfield;** Joe **Percich;** John J. **Terpstra;** Janet E. **Terpstra;** Plaintiffs–Appellees,

v.

**ASARCO INCORPORATED,** a New Jersey corporation, Defendant–Appellant.

No. 95–36025.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 6, 1997.

Decided June 11, 1997.

---

Peter J. Nickles, Covington & Burling, Washington, DC, and John W. Phillips, Heller, Ehrman, White & McAuliffe, Seattle, WA, for defendant–appellant.

David D. Hoff, Graham & James, Riddell Williams, Seattle, WA, for plaintiffs–appellees.

Before: WALLACE, BOOCHEVER and HAWKINS, Circuit Judges.

HAWKINS, Circuit Judge:

We consider what constitutes a reasonable attorney fee in the context of a written settlement agreement and whether the body of law pertaining to statutory fee awards or "common fund" cases has application here. As part of a $67.5 million settlement of an environmental class action lawsuit, Asarco Incorporated ("Asarco") agreed to pay the reasonable attorney fees and expenses of class counsel, as determined by the court. Asarco appeals from the district court's fee award of $8 million. We affirm.

### Facts and Procedural History

Plaintiffs brought a class action against Asarco for alleged contamination of residential soils by emissions of arsenic and lead from a local Asarco smelter. On the eve of trial, the parties negotiated a $67.5 million settlement (the "Settlement Agreement"), consisting of: (1) a ten-year $500,000 fund

for medical monitoring, with Asarco replenishing the fund if needed (the "Medical Monitoring Program"); (2) a ten-year $1.5 million fund to compensate for declines in property values due to the contamination, to be similarly replenished (the "Property Value Assurance Program"); (3) a $5 million cash payment within 7 days of court approval of the Settlement Agreement; and (4) $60.5 million in cash, which was not guaranteed, but would come from Asarco's potential recovery on an insurance claim. Even if Asarco failed to recover from its insurer, Asarco promised to pay an additional $5 million to the class. The $60.5 million also included attorney fees and expenses as determined by the court, which Asarco agreed to pay directly, rather than detracting from the recovery given to the class. The Settlement Agreement permitted Asarco to take up to two years to pay the attorney fee award if it exceeded $10 million.

A few days later, the parties reached a supplemental agreement regarding attorney fees (the "Attorney Fee Agreement"). Essentially agreeing to a minimum fee award, the parties stipulated that class counsel's lodestar was equal to or less than $4 million, with expenses in slight excess of $1.5 million, and that Asarco would not litigate this amount. The parties stipulated that "[w]ith regard to any multiplier on the lodestar, either side may argue its position to Judge Dwyer" and that either party could appeal the amount of any multiplier awarded. The Attorney Fee Agreement provided for payment of up to $7.5 million within 60 days, and reconfirmed that Asarco would have two years to pay any amount exceeding $10 million.

Upon approval of the Settlement Agreement,[1] class counsel petitioned the court, alternatively, for fees and expenses equal to 25% of the $67.5 million ($16,875,000) or for fees equal to the lodestar times a multiplier of 3.8 plus expenses ($16,782,951.30). After considering both a time-based calculation plus multiplier and a percentage-based figure, the court determined that a fee of $8

million was "fair and reasonable" and also awarded $1.6 million in expenses.

## Standard of Review

■ We review a district court's award of attorney fees for abuse of discretion. *In re Washington Public Power Supply System Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994)("*WPPSS*"). An abuse of discretion is "a plain error, discretion exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found." *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir.1993) (citation omitted). When reviewing for abuse of discretion, we cannot reverse unless we have a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Smith v. Jackson*, 84 F.3d 1213, 1221 (9th Cir.1996).

## Discussion

At the outset, we note that the fee dispute in this case arises out of contract: in the Settlement Agreement, Asarco agreed to pay the reasonable attorney fees and expenses as determined and awarded by the court. The Attorney Fee Agreement did not limit the district court's discretion in determining the fee. The court clearly recognized that it could award a fee below, above or at the lodestar figure the parties arrived at in the Attorney Fee Agreement. Under the Settlement Agreement, the only constraint on the district court's discretion was the requirement that the fee be "reasonable." We hold that the district court did not abuse that discretion.

### I. The Multiplier

■ To determine a reasonable fee, the court first used a time-based calculation plus multiplier. In determining that a multiplier of 2.0 would be appropriate, the court considered a variety of factors, including the risk the plaintiffs' attorneys took in taking the case on a contingency basis, the quality of

---

1. Judge Dwyer presided over the pretrial process, but also participated in the settlement negotiations. Thus, the settlement had to be approved by a different judge. Judge Dwyer resumed control of the case after Judge Coughenour's approval of the settlement.

the Asarco opposition, the ongoing and continuing responsibilities class counsel would have in the case, the quality of the work of class counsel, and the results obtained.

Asarco contends a 2.0 multiplier was an abuse of discretion because: (1) contingent-risk multipliers are impermissible when the defendant pays the fees, and (2) the other factors the court considered—skill, quality, complexity and results—are subsumed in the lodestar. We affirm this award because even assuming Asarco's arguments are correct, the multiplier is fully justifiable as the "reasonable fee" the parties contractually agreed to. *See, e.g., Fadhl v. City of San Francisco,* 859 F.2d 649, 651 (9th Cir.1988) (even if district court considers inappropriate factors in calculating the multiplier, appellate court can affirm on any permissible ground supported by the record).

Asarco first argues that the Supreme Court's decision in *City of Burlington v. Dague,* 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), which invalidates the use of contingency multipliers in statutory fee-shifting cases, also prohibits the use of a contingency multiplier any time the defendant pays the fees, mandated by statute or not. *See Dague,* 505 U.S. at 565–66, 112 S.Ct. at 2642–43 (holding contingency multipliers are not available under statutory fee-shifting provisions of Solid Waste Disposal Act and the Clean Water Act).

Class counsel, on the other hand, contends that this case presents a common fund situation, and is thus governed by our decision in *WPPSS,* in which we found that *Dague* does not apply to common fund cases. *See WPPSS,* 19 F.3d at 1301.

We recognize that this situation is neither fish nor fowl nor fair weather game; i.e., neither *Dague* (in that the fee-shifting is voluntary and contractual rather than statutorily-mandated) nor *WPPSS* (in that class counsel's fee would come from the defendant directly and not out of the class recovery). Although the district court did engage in a *Dague* debate with counsel, we find it unnecessary to decide whether *Dague* extends to the case at hand, since, as discussed below, the fee is justifiable on other grounds.

Asarco further asserts that the court's supporting reasons for the multiplier—skill, quality, complexity and results—are subsumed by the lodestar. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986); *Blum v. Stenson,* 465 U.S. 886, 898–900, 104 S.Ct. 1541, 1548–50, 79 L.Ed.2d 891 (1984). While these factors are ordinarily reflected in the lodestar, the Supreme Court has recognized that in exceptional cases, quality of representation and exceptional results can, in fact, warrant an adjustment to the lodestar. *Id.* This is clearly one of those exceptional cases. This judge, no stranger to complex litigation, spoke in awe of class counsel's performance, stressing the first-rate job the lawyers did, their sheer endurance, and the exceptional results obtained, which the court viewed as especially remarkable in light of the quality of opposition counsel and Asarco's record of success in this type of litigation.

But even assuming that Asarco is correct on both points, the multiplier (as well as the resultant fee) is justifiable on the basis of another factor: class counsel's continuing obligations to the class. As the district court recognized, both the Medical Monitoring Program and Property Value Assurance Program continue for a full ten years. Both programs require Asarco to replenish funds as needed, and also necessitate other involvement of class counsel, such as selecting appraisers and a neutral and special master for the Property Value Assurance Program, and selecting physicians for the Medical Monitoring Program. Class counsel must be available to answer class members' questions, develop a plan for distribution of the settlement proceeds and oversee the distributions. Furthermore, class counsel has continuing responsibilities in the settlement negotiations between Asarco and its insurance carrier. In the three months following settlement alone, class counsel expended attorney time equivalent to $237,664.50. Considering the work necessary to administer the distribution process and to oversee the two programs that will last until 2005, a multiplier of 2.0 is not "discretion exercised to an end not justified by the evidence." *Int'l Jensen,* 4 F.3d at 822.

## II. The Percentage Method

The district court did not stop with a lodestar-multiplier approach to the determination of a reasonable fee, but employed a percentage method as an alternative basis. Cross-checking the $8 million fee against the stated value of the Settlement Agreement, the court determined that the fee award constituted only 12% of the class' recovery.[2]

Asarco does not argue that 12% is unreasonably high; rather, it argues that the figure the district court used in calculating the percentage was too high. Asarco contends the percentage should be based only on the recovery that the class is guaranteed to receive, namely cash payments of $10 million, along with initial contributions of $2 million to the Medical Monitoring Program and Property Value Assurance Program. Emphasizing the speculative nature of the settlement, Asarco would assign a zero value to any potential insurance recoveries. There are two problems with this position: (1) in arguing for approval of the settlement, Asarco asserted that there was a good chance of recovery from its insurance carrier, and that this potential recovery was truly valuable to the class; and (2) both parties valued the settlement at $67.5 million, a figure the district court found both reasonable and genuinely arrived at.

The district court was fully aware that much of the cash fund was not guaranteed:

> It is true that part of [the settlement's value] is made up of prospective recoveries by Asarco from its insurance carriers. That part is not guaranteed, but the parties have looked forward and do look forward with confidence to the outcome of that litigation.

The court, however, also realized that the insurance recovery was only one aspect of the settlement, and pointed out that other aspects of the settlement were open-ended (Asarco would have to replenish two programs as necessary) and difficult to value (such as the peace of mind from the Medical Monitoring Program). Class counsel argued that, according to one of plaintiff's experts, the Property Value Assurance Program *alone* could be worth over $100 million. Under all these circumstances, an agreed value of $67.5 million was appropriate to calculate the fee percentage.

When faced with, in the district court's words, "a complicated formula from which valuable considerations of several kinds are provided to the class members," it is impossible to determine the "actual" value of the recovery for percentage purposes. In such a situation, the court must estimate the total value of the settlement. Particularly in light of the parties' agreement as to value, we cannot say that the district court abused its discretion by using an estimated value equal to the settlement value that was communicated to the class, and equal to the settlement value approved by another judge.[3]

## Conclusion

Judge Dwyer, having observed two years of pre-trial litigation, spoke with confidence about the value of the settlement to the class and the reasonableness of the $8 million fee award. In light of the standard of review, the stated value of the settlement, and the amount of fees awarded (less than the $10 million the parties had prepared for), we lack the "definite and firm conviction" of error that is required for reversal.

AFFIRMED.

---

**2.** Because the Settlement Agreement had included in its stated value an estimation of attorney fees worth $10 million, the amount the class could potentially recover was $57.5 million. As an extra measure of caution, the court compared the fee to this lower figure as well, noting that this would result in a fee that was 14% of the settlement value. The court found that under either calculation, the percentages were "clearly reasonable and, indeed, modest."

**3.** By approving of the particular methods of determining a "reasonable" fee employed by the district court in this case, we do not suggest that these are the only measures of reasonableness a district court might use in a contractual fee-shifting arrangement.