**In re George C. CHU, Debtor.**

**George C. Chu, Appellant,**

**v.**

**Syntron Bioresearch, Inc., Appellee.**

No. 99–CV–2676 W.
Bankruptcy No. 9–06684–H7.

United States District Court,
S.D. California.

July 24, 2000.

Barry L. Ruderman, Allison M. Bonnet, Rathbone & Ruderman, San Diego, CA, for Appellant.

Ali M. M. Mojdehi, Nellwyn W. Voorhies, Baker & McKenzie, San Diego, CA, for Appellee.

## ORDER AFFIRMING BANKRUPTCY COURT'S ORDER; TERMINATING APPEAL

WHELAN, District Judge.

Appellant George C. Chu ("Chu") appeals a final order of the United States Bankruptcy Court for the Southern District of California, the Honorable John J. Hargrove presiding, converting Chu's Chapter 11 reorganization into a Chapter 7 liquidation. Appellee Syntron Bioresearch, Inc. ("Syntron"), Chu's primary creditor, opposes the appeal. All parties are represented by counsel.

This Court has appellate jurisdiction pursuant to 28 U.S.C. §§ 158(a)(1), (c)(1)(A) and General Order 312–D, Part II, ¶ 2.02(a) (S.D.Cal. May 13, 1985). The Court finds this matter appropriate for determination without oral argument pursuant to Rule 8012 of the Federal Rules of Bankruptcy Procedure.[1]

1. By stipulation and order dated March 6, 2000, the Court set a July 24, 2000 hearing

Having read and considered Chu's opening brief, Syntron's responsive brief, Chu's reply, all attached exhibits and the applicable law, and for the reasons expressed below, the Court **AFFIRMS** the order of the Bankruptcy Court.

## I. BACKGROUND

In 1998 Syntron sued Chu and several other defendants in California state court for trade secret theft. On May 4, 1999, after a bench trial, the state court found in favor of Syntron. On July 12, 1999 the court awarded damages of approximately $4.3 million and costs and attorneys' fees of approximately $2.4 million, against all defendants jointly and severally. The court also awarded $150,000 in punitive damages directly against Chu. To postpone collection of this judgment pending appeal, California's appellate system requires Chu to post a supersedeas bond.

On August 2, 1999 Chu filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of California. Chu sought to escape posting a supersedeas bond and to protect his most significant asset, a Days Inn Motel franchise located in El Cajon, California. Chu's bankruptcy schedules listed several large debts to family members and an interest in Syntron stock held by Joe Fan, neither of which Chu previously disclosed to the state court. Syntron subsequently filed a motion to convert Chu's bankruptcy case from a Chapter 11 reorganization into a Chapter 7 liquidation.

By order entered November 17, 1999 the Bankruptcy Court granted Syntron's motion and converted Chu's bankruptcy case into a Chapter 7 liquidation, finding that Chu filed his Chapter 11 petition in bad faith and as a litigation tactic. Chu filed a timely Notice of Appeal, vesting

this Court with appellate jurisdiction under 28 U.S.C. § 158(a).

## II. STANDARD OF REVIEW

"A bankruptcy court's order for conversion of a case is reviewed for an abuse of discretion." *See Johnston v. Jem Dev. Co. (In re Johnston)*, 149 B.R. 158, 160 (9th Cir. BAP 1992) (citing *Richter v. Klein/Ray Broad. (In re Klein/Ray Broad.)*, 100 B.R. 509, 511 (9th Cir. BAP 1987)). An abuse of discretion is "a plain error, discretion exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found." *Wing v. Asarco Inc.*, 114 F.3d 986, 988 (9th Cir.1997) (quoting *International Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993)). "Under the abuse of discretion standard, a reviewing court may not reverse unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of the relevant factors." *United States v. State of Washington*, 98 F.3d 1159, 1163 (9th Cir.1996) (internal quotations omitted). This Court may affirm the Bankruptcy Court's conversion order on any ground fairly supported by the record. *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1223 (9th Cir. 1999); *Hopkins v. United States (In re Hopkins)*, 201 B.R. 993, 995 (D.Nev.1996).

## III. DISCUSSION

Chu contends the Bankruptcy Court clearly erred in finding that Chu filed his Chapter 11 petition in bad faith, and abused its discretion by converting to a Chapter 7 liquidation.[2] Syntron responds that Chu filed his Chapter 11 petition to delay collection of the state court judgment, to evade the requirement of posting

---

date for this matter. On July 13, 2000 the Court issued an order taking the appeal under submission and informing the parties that it would decide the matter on the papers submitted. (Doc. No. 16).

2. Chu's appellate briefs do not challenge the Bankruptcy Court's decision to convert rather than dismiss the Chapter 11 petition; they only challenge the Bankruptcy Court's finding of "cause" for the conversion.

a supersedeas bond and to exploit the Bankruptcy Code as an impermissible means of collaterally attacking the state court judgment.

### A. *BAD FAITH: LEGAL STANDARD*

 Bankruptcy courts have broad discretion to convert or dismiss a Chapter 11 petition for "cause" shown. *Pioneer Liquidating Corp. v. United States Trustee (In re Consol. Pioneer Mortgage Entities)*, 248 B.R. 368, 375 (9th Cir. BAP 2000); 11 U.S.C. § 1112(b) (enumerating ten non-exclusive factors that may constitute "cause" for conversion or dismissal). A finding that the debtor filed a Chapter 11 petition in bad faith may, standing alone, justify its dismissal or conversion. *See, e.g., Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir.1994) (per curiam); *Farley v. Coffee Cupboard, Inc. (In re Coffee Cupboard, Inc.)*, 119 B.R. 14, 17–18 (E.D.N.Y.1990). "The test [of good faith] is whether a debtor is attempting to unreasonably deter and harass creditors or attempting to affect a speedy, efficient reorganization on a feasible basis." *Marsch*, 36 F.3d at 828. The overall goal of the good faith requirement is "to deter filings that seek to achieve objectives outside the legitimate scope of the bankruptcy laws." *Id.*

 A determination of bad faith "requires a case-by-case assessment of multiple factors." *United Enters, Ltd. v. ACI Sunbow, LLC (In re ACI Sunbow, LLC)*, 206 B.R. 213, 219 (Bankr.S.D.Cal. 1997). Several of the recurrent factors that often accompany bad faith bankruptcy filings include: (1) the debtor has one asset; (2) the debtor engaged in improper pre-petition conduct; (3) the debtor can identify only a few unsecured creditors; (4) the debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending against the foreclosure in state court; (5) the debtor and a single creditor proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford; (6) the filing of the petition effectively allows the debtor to evade court orders; (7) the debtor has no ongoing business or employees; and (8) the lack of possibility of reorganization. *See, e.g., Laguna Assocs. Ltd. Partnership v. Aetna Casualty & Sur. Co. (In re Laguna Assocs. Ltd. Partnership)*, 30 F.3d 734, 738 (6th Cir.1994) ("*Laguna*"); *Udall v. FDIC (In re Nursery Land Dev., Inc.)*, 91 F.3d 1414, 1416 (10th Cir.1996) (articulating similar factors); *Phoenix Piccadilly, Ltd. v. Life Ins. Co. (In re Phoenix Piccadilly Ltd.)*, 849 F.2d 1393, 1394–95 (11th Cir.1988) (same); *Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1072–73 (5th Cir.1986) (same). There is no bright line, talismanic number of factors which must exist to find bad faith; the weight of any given factor depends on the facts and circumstances of the case. *Laguna*, 30 F.3d at 738.

### B. *BAD FAITH: ANALYSIS*

 The undisputed record establishes several of the indicia of bad faith detailed above. First, Chu has only one significant creditor, Syntron, who became a creditor as a result of a state court judgment. Chu does not dispute that he filed his bankruptcy petition in response to Syntron's state court victory, and to escape the requirement of posting a supersedeas bond. (Appellant's Op. Br. at 3). Before Chu filed his Chapter 11 petition, however, the state court lowered the bond amount and specifically found that Chu and his co-defendants possessed sufficient combined assets to post the bond. (Appellant's E.R. 40 at 5). The record reveals that Chu and his co-defendants made no sincere attempt to post the supersedeas bond or seek further reduction before they filed their respective Chapter 11 petitions. (*Id.* at 11, 21).

Second, the record supports the Bankruptcy Court's finding that Chu could not propose a plan of reorganization with any reasonable likelihood of confirmation, and that Chu filed his Chapter 11 petition as a

litigation tactic. Chu's purported reorganization plan would have postponed disposition of the Days Inn Motel, Chu's primary asset, until final resolution of the state court appeals. (Appellant's E.R. 40 at 6). Considering the length of the state court trial, its factual and legal complexity, the number of separate defendants and the standard of review the appellate court will apply to the trial court's factual findings, a decision on the appeals could take over two years. Chu's purported reorganization plan would permit him to indefinitely maintain control over his primary asset and prevent Syntron from obtaining recovery from his bankruptcy estate. In addition, Chu filed a memorandum in Bankruptcy Court attacking the state court judgment on the basis of "extrinsic fraud." (Appellant's E.R. 17 at 1–5). Chu argued that the *Rooker–Feldman* doctrine[3] did not apply, and that the Bankruptcy Court had jurisdiction to review and set aside the state court judgment. *Id.* Chu could have easily raised this alleged fraud in the state courts, either on appeal or in a separate motion to vacate the judgment before the trial court. In sum, the Bankruptcy Court permissibly inferred from Chu's untenable reorganization plan and extrinsic fraud memorandum that Chu filed the Chapter 11 petition to delay and collaterally attack the state court judgment.

Third, the Bankruptcy Court's finding of bad faith derives further support from several inconsistencies in Chu's asset and liability disclosures. For example, Chu's bankruptcy schedules indicated that Chu owed approximately $285,000 to family members and relatives from loans that arose years before the commencement of the state court litigation. (Appellee's App. A at 36, 50–52). Four months before the filing of his Chapter 11 petition, however,

Chu filed an affidavit of assets and liabilities in state court that did not disclose any of these alleged family debts. (Appellee's App. A at 58–82). Chu never reported these debts to any court or credit institution prior to the filing of his bankruptcy petition, and he offers no credible explanation for the inconsistencies between the disclosures. *See Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1445 (9th Cir.1986) (bad faith found in part because of debtor's reliance on unsubstantiated debt owed to family member who had not received recent payment from debtor) (Chapter 13 dismissal); *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1225 (9th Cir. 1999) (bad faith found in part because of inconsistencies in debtor's asset and liability disclosures). Although Chu attributes his failure to report these alleged unsecured debts to inadvertent mistake, the Bankruptcy Court did not err in its implicit rejection of Chu's dubious and uncorroborated explanations. Chu's non-family unsecured debts do not exceed $20,000–an infinitesimal fraction of the state court judgment. (*See* Appellee's App. A at 50–52). These suspicious family loans suggest that Chu sought to obscure his lack of unsecured debt and the two-party nature of his bankruptcy case.

The record reveals further inconsistencies involving Chu's alleged interest in certain Syntron shares issued to Joe Fan, a co-defendant in the state court trial. Chu's bankruptcy schedules stated that Chu held an interest in Fan's shares valued at $4.3 million. (Appellee's App. A at 43). Chu's earlier asset disclosure to the state court, however, made no mention of this alleged stock interest. (Appellee's App. A at 60). As in this case, the sudden and unexplained appearance of assets and

---

**3.** The *Rooker–Feldman* doctrine, established by two Supreme Court decisions handed down 60 years apart, provides that district courts lack jurisdiction to hear a collateral attack on a state court judgment or to review final state court decisions. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The *Rooker–Feldman* doctrine precludes bankruptcy litigants from collaterally attacking state court judgments, even on constitutional grounds. *See, e.g., Ryan v. Loui (In re Corey)*, 892 F.2d 829, 834 (9th Cir.1989).

liabilities suggests a debtor attempting to concoct an estate facially suitable for Chapter 11 reorganization.[4]

In sum, the Bankruptcy Court had numerous undisputed facts upon which to base its finding of bad faith: (1) the bulk of Chu's debt was owed to a single and recent creditor and resulted from a state court judgment; (2) Chu made no sincere attempts to confer with his co-defendants to post a supersedeas before the filing of the Chapter 11 petition; (3) Chu could not propose a plan of reorganization with any reasonable likelihood of confirmation; (4) Chu has few unsecured creditors, (5) Chu's asset and liability disclosures before the state court and the Bankruptcy Court presented numerous, largely unexplained, inconsistencies; and (6) the record as a whole confirms that Chu sought bankruptcy protection to collaterally attack the state court judgment, escape the supersedeas bond requirement and preclude Syntron from obtaining recovery. All of these factors, taken together, amply supported the Bankruptcy Court's finding of bad faith. *See, e.g., Marsch,* 36 F.3d at 828 (affirming dismissal of bankruptcy petition for bad faith where debtor sought to avoid supersedeas bond procedure and had sufficient nonbusiness assets to post the bond); *In re Boynton,* 184 B.R. 580, 584 (Bankr. S.D.Cal.1995) (dismissing Chapter 11 case where individual debtor sought to evade enforcement of tax court judgment and coerce a settlement through needless delay). The Bankruptcy Court did not err in converting Chu's Chapter 11 reorganization into a Chapter 7 liquidation.

### c. CHU'S ARGUMENTS

Chu responds with two primary arguments. First, Chu contends that he filed

his bankruptcy petition to protect the Days Inn Motel, an ongoing business which he owns. Second, Chu contends the Bankruptcy Court erred in not making a finding that conversion would serve the best interests of the creditors and the estate. For the reasons expressed below, the Court finds both arguments without merit.

First, Chu correctly observes that federal courts have, in limited situations, approved the use of bankruptcy to avoid posting a supersedeas bond. "Generally, two types of cases have allowed a Chapter 11 filing in lieu of a supersedeas bond. These are: 1) where there is a multinational company faced with mass tort litigation; or 2) where a large debt would force the debtor to close its business and liquidate." *In re Boynton,* 184 B.R. at 583. Here, Chu contends that his case falls squarely within the latter category; that he filed for bankruptcy to prevent the disruption of the Days Inn Motel, a business that employs 11 individuals.

The Ninth Circuit has declined to resolve whether a judgment debtor can seek bankruptcy protection to evade a supersedeas bond requirement and protect an ongoing business. *Marsch,* 36 F.3d at 829. This Court need not decide whether a judgment debtor may permissibly file a bankruptcy petition for this purpose; even assuming such a practice comports with the principles and policies of the Bankruptcy Code, it has no application here. The decisions that have approved the use of bankruptcy to avoid posting a bond involved cases where the evidence unequivocally demonstrated the debtor's good faith.

---

**4.** Chu filed numerous evidentiary objections that sought to preclude the Bankruptcy Court from considering most of Syntron's exhibits filed in support of its conversion motion. Although the record does not reveal whether the Bankruptcy Court ruled on them, this Court finds no merit to the hearsay, relevance and judicial notice objections directed towards the orders and declarations filed in state court.

Syntron did not offer the state court documents to prove that Chu committed trade secret theft, but merely to describe the events and outcome of the state court trial and to identify the specific representations Chu made before that court. The documents had clear relevance to the bad faith inquiry, had obvious non-hearsay purposes and were properly subject to judicial notice.

For example, the primary case cited by Chu approving the use of Chapter 11 to escape an appellate bond requirement is *In re Alton Telegraph Printing Co.*, 14 B.R. 238 (Bankr.S.D.Ill.1981). In that case, Alton Telegraph, a 100–year old local newspaper with numerous employees, lost a libel suit and had a $9.2 million judgment entered against it. After Alton Telegraph filed its Chapter 11 bankruptcy petition, the judgment creditor moved to dismiss for lack of good faith. *Id.* at 241. The bankruptcy court denied the motion, reasoning that the circumstances in the case negated any inference of bad faith. The court relied on several facts, including: (1) Alton Telegraph had shown that it could not post the supersedeas bond pending appeal; (2) the unstayed judgment would have ruinous effects on the newspaper; (3) the newspaper had formed a viable reorganization plan in the event its defenses and appeals failed; and (4) there were no indicia of bad faith. *Id.*

This case is not *Alton Telegraph*. The undisputed record establishes the polar opposite of each of the four facts identified in the preceding paragraph. First, Chu made no attempt to post the supersedeas bond and instead filed this Chapter 11 petition with inexcusable haste, despite the state court's explicit finding that Chu and his co-defendants could collectively afford to post the bond. Second, the state court judgment against Chu does not directly place the motel's business assets in jeopardy; while the judgment may subject the motel to a change of ownership and control, it will not face the economic ruin that confronted Alton Telegraph. Third, Chu's unconfirmable plan of reorganization relied almost entirely on postponing liquidation of the motel until final resolution of the appeals of the state court judgment. Finally, the small number of unsecured creditors, the mysterious inconsistencies involving Chu's debts to family members and the Fan stock interest, and Chu's apparent use of the bankruptcy filing to obtain a cheaper method of staying and attacking the state court judgment all provide the additional circumstantial indicia of bad faith absent in *Alton Telegraph*.

▮ As his second argument, Chu contends the Bankruptcy Court erred in not making a finding that conversion would serve the best interests of the creditors and the estate. Chu cites *In re Staff Inv. Co.*, 146 B.R. 256 (Bkrtcy.E.D.Cal.1992) (*"Staff Investment"*) for the proposition that the best interests are a "second element" of any bankruptcy conversion. (Appellant's Op. Br. at 12). This argument lacks merit; *Staff Investment* discussed the balancing of interests between creditors and the estate when a conversion is *based on* the best interests of the creditors and the estate, and when the court must decide whether to dismiss or convert under 11 U.S.C. § 1112(b). *See* 146 B.R. at 260–61. That case did not involve a conversion for bad faith and thus has no bearing on the instant appeal. A finding of bad faith, as discussed previously, independently justifies conversion or dismissal of a Chapter 11 petition. *Marsch*, 36 F.3d at 828. Moreover, it is axiomatic that conversion or dismissal will serve the best interests of creditors where, as here, the debtor files a Chapter 11 petition in bad faith and cannot propose a plan of reorganization that has a reasonable likelihood of confirmation.[5]

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the Court **AFFIRMS** the Bankruptcy Court's order converting Chu's Chapter 11 reorganization into a Chapter 7 liquidation. The Clerk of Court shall close the district court case file.

**IT IS SO ORDERED.**

---

5. As noted in footnote 2, *supra,* Chu does not challenge the Bankruptcy Court's decision to convert rather than dismiss the Chapter 11 petition.