# FILED

## NOT FOR PUBLICATION

APR 03 2017

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | ) BAP No. CC-16-1303-FLKu |
| | ) |
| DENNIS D. WINDSCHEFFEL, | ) Bk. No. 2:15-bk-19933-SK |
| | ) |
| Debtor. | ) |
| _____ | ) |
| | ) |
| DENNIS D. WINDSCHEFFEL, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) **MEMORANDUM**[*] |
| | ) |
| MONTEBELLO UNIFIED SCHOOL | ) |
| DISTRICT, | ) |
| | ) |
| Appellee. | ) |
| _____ | ) |

Argued and Submitted on March 23, 2017
at Pasadena, California

Filed – April 3, 2017

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Sandra R. Klein, Bankruptcy Judge, Presiding

_____

Appearances:     Evan L. Smith argued on behalf of appellant Dennis D. Windscheffel; Jeffrey T. Vanderveen argued on behalf of appellee Montebello Unified School District.

_____

Before:  FARIS, LAFFERTY, and KURTZ, Bankruptcy Judges.

_____

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, see Fed. R. App. P. 32.1, it has no precedential value, see 9th Cir. BAP Rule 8024-1.

**INTRODUCTION**

Debtor Dennis D. Windscheffel appeals from the bankruptcy court's order dismissing his chapter 11[1] case for bad faith. He contends that the court erred by relying on judicially-created bad faith tests, rather than the statutory factors in § 1112(b)(4), in finding cause to dismiss. Mr. Windscheffel's argument is meritless and unsupported by any legal authority. Accordingly, we AFFIRM.

**FACTUAL BACKGROUND**

**A.    Prepetition events**

Mr. Windscheffel and his company, Fitness Profile, Inc. ("FPI"), operated after-school programs for Appellee Montebello Unified School District ("MUSD"). MUSD filed suit against Mr. Windscheffel and FPI in the superior court of Los Angeles, alleging that Mr. Windscheffel and FPI had breached certain agreements with MUSD and committed fraud, breach of contract, and conversion of public funds.

Following a bench trial, the state court found that Mr. Windscheffel had converted over $400,000 in public school funds and commingled or mismanaged money that the state and federal governments had granted to MUSD to provide educational services to needy children. The state court awarded MUSD damages of $2,171,609 (including punitive damages of $802,000) and attorneys fees and costs of $672,623.96, with interest at ten percent per annum.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

Mr. Windscheffel and FPI filed an appeal in the state court, but he claimed that he was unable to post the required supersedeas bond to stay enforcement of the judgment. He filed bankruptcy to avoid posting the bond and to stay MUSD's collection efforts.

**B.    Mr. Windscheffel's chapter 11 filing**

On June 22, 2015, Mr. Windscheffel filed a voluntary chapter 11 petition. His schedules included MUSD's state judgment claim for $2,171,609. (MUSD subsequently filed a claim in the amount of $2,843,926.96.) He listed only two other unsecured creditors with claims totaling approximately $500.

**C.    The Motion to Dismiss**

On June 23, 2016, MUSD filed a motion to dismiss Mr. Windscheffel's chapter 11 case ("Motion to Dismiss") for bad faith. MUSD argued that Mr. Windscheffel only filed for bankruptcy for the purpose of delaying collection of the state court judgment without obtaining a supersedeas bond. It said that his amended plan was a thinly veiled attempt to avoid the state court's award of punitive damages, attorneys' fees, and interest because it proposed to pay 49.22 percent of MUSD's claim, which was (not coincidentally) the approximate amount of the state court judgment without punitive damages, attorneys' fees, and interest.

Before filing his opposition to the Motion to Dismiss, Mr. Windscheffel filed his second amended plan. He proposed that, "[i]n the event that the MUSD Judgment is not reversed upon appeal, the Debtor will present MUSD with the best offer he is able to obtain for the sale of Debtor's real and personal

3

property. MUSD shall have the right to disapprove any sale agreement that the Debtor presents."[2] According to the second amended disclosure statement filed concurrently with the second amended plan, Class 6(b) (general unsecured creditors) included MUSD, the two unsecured creditors with minor claims, and, for the first time, the law firm of Musick, Peeler & Garrett LLP, which was handling Mr. Windscheffel's state court appeal (although the law firm did not file a proof of claim).

In opposition to the Motion to Dismiss, Mr. Windscheffel argued that he sought bankruptcy relief because he could not afford to obtain a supersedeas bond. He said that he filed for bankruptcy protection to preserve and maximize his assets for the benefit of MUSD and other unsecured creditors. He also contended that his proposal to pay MUSD less than 100 percent of its claim was not in bad faith, because "MUSD could not choke any more out of Mr. Windscheffel in satisfaction of that judgment than it could through Mr. Windscheffel's Plan." Importantly, Mr. Windscheffel did not challenge MUSD's recitation of the legal standard for bad faith or discuss the factors enumerated in § 1112(b)(4).

The bankruptcy court issued its tentative ruling that indicated its intention to grant the Motion to Dismiss. In a detailed, twenty-page memorandum, the court examined the various

---

[2] In its tentative ruling, the bankruptcy court noted that the first amended plan had proposed that each general unsecured creditor would be paid 49.22 percent and contained an addendum in which Mr. Windscheffel proposed to pay MUSD $1.4 million. In contrast, the second amended plan did not include a proposal to pay MUSD any particular percentage or amount.

4

tests for finding "cause" to dismiss a petition for bad faith. It noted that a determination of bad faith requires a case-by-case assessment of multiple factors and acknowledged that various courts have considered different factors establishing bad faith, including Marsch v. Marsch (In re Marsch), 36 F.3d 825 (9th Cir. 1994), In re Mense, 509 B.R. 269 (Bankr. C.D. Cal. 2014), Chu v. Syntron Bioresearch, Inc. (In re Chu), 253 B.R. 92 (Bankr. S.D. Cal. 2000), and In re Erkins, 253 B.R. 470 (Bankr. D. Idaho 2000). It undertook a detailed, point-by-point examination of the various factors outlined in Erkins, Mense, and Chu and found that the factors supported a finding of bad faith under all of the tests.

The bankruptcy court also correctly noted that, if it finds cause, it must decide whether dismissal or conversion is in the best interest of the creditors and the estate. It stated that dismissal was in the best interest of the creditors because it would allow MUSD to resume collecting the judgment and prevent Mr. Windscheffel from diminishing the estate's assets. It further stated that dismissal was preferable to conversion because of the costs and fees associated with a chapter 7 case.[3]

At the hearing on the Motion to Dismiss, the bankruptcy court primarily engaged in a colloquy with counsel for Mr. Windscheffel regarding certain factors of the various tests: Mr. Windscheffel's intention to delay collection of the state

[3] The court also correctly noted that, if it decided to dismiss the case, it would also have to consider whether to dismiss the case with or without prejudice. Ultimately, the court dismissed the case without prejudice. No one challenges this aspect of the court's ruling.

5

court judgment; the value of his assets; his proposal to pay MUSD only the compensatory damages award and not the punitive damages or attorneys' fees and costs; the late inclusion of the law firm as an unsecured creditor; and his proposal to only pursue liquidation and pay MUSD after the state court litigation had concluded with a final, unappealable judgment. Critically, Mr. Windscheffel did **not** take issue with the court's reliance on case law such as Erkins, Mense, and Chu in determining bad faith and did **not** argue that the court was restricted to the enumerated factors in § 1112(b)(4).

The court granted the Motion to Dismiss and entered its order adopting its tentative ruling in whole and dismissing Mr. Windscheffel's chapter 11 case. Mr. Windscheffel timely appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1) and (2)(A). We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Whether the bankruptcy court abused its discretion in dismissing Mr. Windscheffel's chapter 11 petition for bad faith.

**STANDARDS OF REVIEW**

"We review de novo whether the cause for dismissal of a Chapter 11 case under 11 U.S.C. § 1112(b) is within the contemplation of that section of the Code. We review for abuse of discretion the bankruptcy court's decision to dismiss a case as a 'bad faith' filing." In re Marsch, 36 F.3d at 828 (citing Stolrow v. Stolrow's, Inc. (In re Stolrow's, Inc.), 84 B.R. 167,

6

170 (9th Cir. BAP 1988)); see Hutton v. Treiger (In re Owens), 552 F.3d 958, 960 (9th Cir. 2009); Sullivan v. Harnisch (In re Sullivan), 522 B.R. 604, 611 (9th Cir. BAP 2014).

The Panel must apply a two-part test to determine whether the bankruptcy court abused its discretion. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc). First, we consider de novo whether the bankruptcy court applied the correct legal standard. Id. Then, we review the bankruptcy court's factual findings for clear error. Id. at 1262 & n.20; see Eisen v. Curry (In re Eisen), 14 F.3d 469, 470 (9th Cir. 1994) (the bankruptcy court's finding of "bad faith" is reviewed for clear error). A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible, or without support in the record. See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

**A. The bankruptcy court did not err in determining that Mr. Windscheffel filed his petition in bad faith and dismissing his case for cause.**

Section 1112(b)(1) provides that "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . ." § 1112(b)(1).

Mr. Windscheffel agrees that filing a chapter 11 in bad faith can constitute "cause" under § 1112(b)(1). The Ninth Circuit has so held. "Although section 1112(b) does not explicitly require that cases be filed in 'good faith,' courts have overwhelmingly held that a lack of good faith in filing a

7

Chapter 11 petition establishes cause for dismissal." In re Marsch, 36 F.3d at 828 (citations omitted).

Instead, Mr. Windscheffel contends that the court considered impermissible factors in determining that he filed his petition in bad faith. He points out that § 1112(b)(4)(A)-(P) list types of "cause" warranting dismissal. He acknowledges that the list of factors is not exhaustive, but argues that the courts' creation of other bases for "cause" exceeds authority granted by Congress.

This contention is wrong for multiple reasons.

First, he never presented it to the bankruptcy court, and, absent exceptional circumstances, this panel will not consider an issue raised for the first time on appeal. See Yamada v. Nobel Biocare Holding AG, 825 F.3d 536, 543 (9th Cir. 2016). Mr. Windscheffel has not identified any exceptional circumstances.

Second, Mr. Windscheffel's brief in support of his contention does not comply with Rule 8010(a)(1)(E) because it does not include citations to any authority supporting this proposition. See United Student Funds, Inc. v. Wylie (In re Wylie), 349 B.R. 204, 215 (9th Cir. BAP 2006).

Third, he cannot reconcile his argument with the plain language of the statute. Section 1112(b)(4) says that the term "cause **includes**" the enumerated factors. (Emphasis added.) Congress specifically provided that the terms "'includes' and 'including' are not limiting." § 102(3). This proves that Congress did not intend to limit "cause" to the listed items and deliberately empowered the courts to expand that list as

8

appropriate.

Fourth, he fails to offer any workable limiting principle. We agree that the bankruptcy court's power to define "cause" under § 1112(b)(4) has limits. But Mr. Windscheffel fails to explain where he thinks the limits should be placed or how a court could determine whether it has transcended those limits.[4]

Fifth, the only specific reason he offers to limit the test is specious. He argues that the bad faith analysis wastes court time and resources. We doubt the sincerity of Mr. Windscheffel's concern for the judiciary's time management.[5] In any event, the courts will not shy away from a necessary analysis merely because it is complex, difficult, or time consuming.

We find no error in the bankruptcy court's thorough and careful analysis. We have said that the bankruptcy court must consider the totality of the circumstances when determining whether the debtor acted in bad faith. Courts have developed helpful lists of circumstantial factors that might indicate bad

---

[4] Mr. Windscheffel argues that using the established tests for a bad faith filing "is no more appropriate than the conduct of 19th Century employers who posted signs stating 'No Irish need apply.'" This argument is puzzling at best and offensive at worst. We surely agree that the debtor's national origin has no place in the bad faith analysis. But there is no indication that the bankruptcy court in this case paid any attention to Mr. Windscheffel's national origin.

[5] In fact, the bankruptcy court observed that Mr. Windscheffel made the court's task more difficult by failing to provide substantive analysis or competent evidence: "Again it's not the Court's responsibility to dig through the record and try to infer what debtor may or may not have the ability to do and in fact one of the cases goes into an analysis of the debtor's efforts to post a bond but inability to do so and there's no evidence of that in the record."

9

faith. The bankruptcy court does not have to consider all of the factors, nor does it have to weigh them equally. A bankruptcy court may find one factor dispositive or may find bad faith even if none of the factors are present. See Mahmood v. Khatib (In re Mahmood), BAP No. CC-16-1210-TaFC, 2017 WL 1032569, at *4 (9th Cir. BAP Mar. 17, 2017).

In the present case, the bankruptcy court acknowledged that there is no single test within the Ninth Circuit to determine whether a debtor acts in bad faith when he files a bankruptcy petition to stay appellate proceedings in state court and avoid a supersedeas bond. We find no error in the court's use of the Erkins, Mense, and Chu tests. Those tests include factors that this Panel has endorsed previously. In St. Paul Self Storage Ltd. Partnership v. Port Authority of St. Paul (In re St. Paul Self Storage Ltd. Partnership), 185 B.R. 580 (9th Cir. BAP 1995), we said:

> To determine whether a debtor has filed a petition in bad faith, courts weigh a variety of circumstantial factors such as whether:
>
> (1) the debtor has only one asset;
> (2) the debtor has an ongoing business to reorganize;
> (3) there are any unsecured creditors;
> (4) the debtor has any cash flow or sources of income to sustain a plan of reorganization or to make adequate protection payments; and
> (5) the case is essentially a two party dispute capable of prompt adjudication in state court.

185 B.R. at 582–83 (citations omitted). We have also utilized a more expansive list of factors. See, e.g., In re Stolrow's, Inc., 84 B.R. at 171 (considering eight factors). In any event, we recognize that there is no single test to determine bad faith, and the bankruptcy court did not err in selecting the factors

10

relevant to this case.

Therefore, the bankruptcy court did not err in finding cause to dismiss Mr. Windscheffel's chapter 11 petition based on bad faith.

**B.  Mr. Windscheffel's performance of his duties as a debtor in possession does not overcome a bad faith determination.**

Mr. Windscheffel contends that the bankruptcy court failed to consider that he was faithfully performing all of his required obligations as a debtor in possession.  The bankruptcy court did not err.

We rejected an almost identical argument in St. Paul, where the debtor claimed that it did not file its bankruptcy petition in bad faith.  To "support this contention, [d]ebtor refers to the fact that it filed a proposed disclosure statement and plan, filed all monthly operating reports, and paid all quarterly fees to the United States Trustee."  185 B.R. at 583.  We rejected this argument: "notwithstanding Debtor's reverence for form, the substance of this case indicates that the bankruptcy court's finding of bad faith was not clearly erroneous nor did it abuse its discretion when dismissing the case."  Id.

If a debtor's timely filing of operating reports, compliance with various reporting requirements, and work toward reorganization rebutted a finding of bad faith, then every debtor who complied with the bare minimum of procedural requirements would be immunized from a bad faith finding.  In re Mahmood, 2017 WL 1032569, at *5.  This is not the law.  Mr. Windscheffel's postbankruptcy compliance with the rules does not excuse his bad faith commencement of the case.

11

**C. The bankruptcy court properly considered the interests of other unsecured creditors.**

Mr. Windscheffel contends that the bankruptcy court failed to consider the interests of the other unsecured creditors. This is a frivolous argument.

If a bankruptcy court determines that there is cause to convert or dismiss, it must also: (1) decide whether dismissal, conversion, or the appointment of a trustee or examiner is in the best interests of creditors and the estate; and (2) identify whether there are unusual circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate. §§ 1112(b)(1), (2); In re Sullivan, 522 B.R. at 612. This is a discretionary decision. In re Sullivan, 522 B.R. at 612.

The bankruptcy court explicitly considered the interests of the three other unsecured creditors. It declined to characterize the law firm representing Mr. Windscheffel in the state court action as an unsecured creditor in Class 6(b): the law firm did not file a proof of claim; Mr. Windscheffel only added the law firm as an unsecured creditor after MUSD filed its Motion to Dismiss; and the law firm's fees for postbankruptcy services were not authorized by the court. The remaining unsecured creditors held combined claims totaling about $500. The court noted that their claims were negligible, especially in light of MUSD's $2.1 million claim. It correctly focused on the interest of MUSD, the predominant unsecured creditor.

Mr. Windscheffel also claims that, if he liquidates his properties, the state and federal taxing agencies will receive

12

substantial tax revenue. Once again, we question the sincerity of Mr. Windscheffel's concern for the public fisc. In any event, the taxing authorities would also benefit if Mr. Windscheffel's assets were liquidated outside of bankruptcy.

The court did not abuse its discretion in its consideration of the interests of other creditors.

**D. The allegedly deficient service on two federally insured deposit institutions does not void the dismissal order.**

Finally, Mr. Windscheffel argues for the first time on appeal that MUSD failed to properly serve the Motion to Dismiss on two federally insured depository institutions.[6] Essentially, he argues that, because the two banks were not served properly, the order on appeal is void. Mr. Windscheffel's argument flies in the face of binding precedent.

We have stated:

> [P]ersonal jurisdiction is an individual right. Parsons v. Plotkin (In re Pac. Land Sales, Inc.), 187 B.R. 302, 309 (9th Cir. BAP 1995). In asserting that the bankruptcy court did not have personal jurisdiction over the doctor participants due to defective service of process, [appellant] is attempting to assert the doctors' individual constitutional rights to due process. He has no standing to do so. Id. at 310.

Korneff v. Downey Reg'l Med. Ctr.-Hosp., Inc. (In re Downey Reg'l Med. Ctr.-Hosp., Inc.), 441 B.R. 120, 128 (9th Cir. BAP 2010). In other words, the dismissal order is not void, because Mr. Windscheffel cannot assert the two banks' rights on their

---

[6] Mr. Windscheffel filed a request for judicial notice asking that we take judicial notice of two documents from the FDIC website purporting to show that Synchrony Bank and Ally Financial are federally insured deposit institutions. We grant the request for judicial notice.

13

behalf.

Moreover, Mr. Windscheffel did not raise the issue of allegedly defective service with the bankruptcy court, either in writing or at the hearing on the motion. As we stated above, we will not consider new arguments for the first time on appeal. See Yamada, 825 F.3d at 543.

Thus, Mr. Windscheffel cannot successfully challenge the dismissal order on the basis that other parties were not properly served.

## CONCLUSION

For the reasons set forth above, the bankruptcy court did not abuse its discretion in dismissing Mr. Windscheffel's case. Therefore, we AFFIRM.

14