[No. B229687. Second Dist., Div. Eight. Sept. 29, 2011.]

AMERICAN HONDA MOTOR CO., INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
JIN HYEONG LEE, Real Party in Interest.

Counsel

Mayer Brown, Donald M. Falk; Lewis Brisbois Bisgaard & Smith, Anthony E. Sonnett and Sharon E. Sonnett for Petitioner.

No appearance for Respondent.

McCune Wright, Richard D. McCune, Kristy M. Arevalo; Law Offices of Choi & Associates, Edward W. Choi; Diversity Law Group, Daniel H. Chang, Larry W. Lee; Panish Shea & Boyle and Brian J. Panish for Real Party in Interest.

Opinion

**BIGELOW, P. J.**—In this mandate proceeding, American Honda Motor Co., Inc. (Honda), challenges the trial court's order certifying a class of individuals who purchased or leased Acura cars with a defective third gear. Because the trial court relied upon an erroneous legal assumption when it made its ruling and there is insufficient community of interest here to sustain the class that was certified, we conclude the trial court's certification order was an abuse of discretion, for which mandate is an appropriate remedy.

### FACTS

Plaintiff Jin Hyeong Lee bought a new Acura RSX with a six-speed manual transmission on October 13, 2006. The car came with a standard manufacturer's four-year, 50,000-mile warranty, which certified that "Acura will repair or replace any part that is defective in material or workmanship under normal use." Lee began to experience problems with the transmission within the warranty period when the car would "pop out" of third gear while it was running. Lee took the car to be serviced on this issue four times within 15 months, but was told by Honda technicians that the car was operating as designed and that there was no nonconformity or defect.

In January 2007, Honda issued a service update to its dealers: "We've heard reports of clients complaining about the [manual transmission] shifting stiffly or popping out of gear. In each case, the [manual transmission] was using aftermarket [manual transmission fluid] or old Acura [manual transmission fluid]. If you've got a vehicle in your shop that fits this profile, try draining the [manual transmission fluid] and replacing it with new Acura Precision Crafted [manual transmission fluid which] offers better overall shift quality in cold weather (especially in freezing temperatures), and it's got better friction reduction for improved fuel economy and longer transmission life. [¶] After filling the [manual transmission] with this new [manual

transmission fluid], take a 10-mile test-drive around town so you can do a lot of shifting. If you've still got this problem after your test-drive, then it's time to do some troubleshooting."

Honda also issued a technical service bulletin (TSB) on April 19, 2008. The TSB addressed the following symptoms: "transmission grinds when shifting into 3rd gear, pops out of 3rd gear, or is hard to shift into 3rd gear." The TSB applied to certain 2002 to 2008 Acura models with manual transmissions.[1] The TSB noted that these symptoms could be "intermittent and sometimes more noticeable in colder climates." The "probable cause" of the issue could be attributed to a "faulty 3rd gear synchronizer or 3–4 shift sleeve." The TSB advised Honda technicians to "drive a known-good vehicle under the same conditions as the client's complaint, and compare the shift quality. If the client's vehicle has noticeable shift quality problems, replace the 3rd gear set." However, "[i]t is not uncommon for there to be some resistance or notchiness when shifting into third gear."

Lee brought suit against Honda on January 8, 2008, and, in a second amended complaint filed February 9, 2009, converted his individual action to a class action alleging a violation of the Song-Beverly Consumer Warranty Act under Civil Code section 1790, a breach of warranty under Civil Code sections 1791.2 and 1794, a breach of warranty under California Uniform Commercial Code section 2103, and unfair business practices under Business and Professions Code section 17200 (UCL). On October 1, 2009, Lee sought to certify a class of "[a]ll individuals in California who purchased or leased [the 2002 to 2008 Acura models described in the TSB], who have not had the re-designed third gear set installed." The trial court granted Lee's motion on October 27, 2010. Honda filed this petition for writ of mandate on December 27, 2010, and sought an immediate stay of the entire case pending determination of the writ proceedings. We stayed the proceedings below and directed the parties to file opposition and reply briefs.

## DISCUSSION

### I. Writ Review Is Appropriate in This Case

We first consider whether mandate is an appropriate remedy in this case. (*Blue Chip Stamps v. Superior Court* (1976) 18 Cal.3d 381, 387, fn. 4 [134 Cal.Rptr. 393, 556 P.2d 755].) Lee contends it is not because Honda may move to decertify at any time or file an appeal after judgment. Moreover, Honda will not suffer irreparable harm if its petition is denied. We disagree.

---

[1] Specifically, the TSB applied to all 2003 3.2 CL's with manual transmission, 2002 to 2006 RSX's with six-speed manual transmission, all 2004 to 2007 TL's with manual transmission and 2008 TL's with manual transmissions within a range of vehicle identification numbers.

"Generally, a writ [of mandate] will lie when there is no plain, speedy, and adequate alternative remedy; the respondent has a duty to perform; and the petitioner has a clear and beneficial right to performance." (*Payne v. Superior Court* (1976) 17 Cal.3d 908, 925 [132 Cal.Rptr. 405, 553 P.2d 565].) It is the petitioner's burden to establish there is no adequate alternative remedy or irreparable harm will result if the petition is denied. (*Omaha Indemnity Co. v. Superior Court* (1989) 209 Cal.App.3d 1266, 1274 [258 Cal.Rptr. 66].) Contrary to Lee's assertions, we find Honda has no adequate alternative remedy and would suffer irreparable harm if its petition were denied. As discussed below, the trial court relied on an incorrect statement of breach of warranty law. If we delayed review until final judgment, Lee would be relieved from proving an essential element of his breach of warranty claim on behalf of 19,000 class members. The parties and the court, not only Honda, would be irreparably harmed as a result.

## II. *Class Action Requirements*

██ Our analysis begins with a review of the requirements to certify a class action. Section 382 of the Code of Civil Procedure authorizes a class action when "the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . ." The burden is on the moving party to establish both an ascertainable class and a well-defined community of interest among the class members. (*Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 913 [103 Cal.Rptr.2d 320, 15 P.3d 1071].) "The community of interest requirement [for class certification] embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." (*Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23].) As the Supreme Court has previously explained, this means "each member must not be required to individually litigate numerous and substantial questions to determine his [or her] right to recover following the class judgment; and the issues which may be jointly tried, when compared with those requiring separate adjudication, must be sufficiently numerous and substantial to make the class action advantageous to the judicial process and to the litigants." (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 460 [115 Cal.Rptr. 797, 525 P.2d 701].) In order to determine whether common questions predominate, the trial court must examine the issues framed by the pleadings and the law applicable to the causes of action alleged. (*Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 810–811 [94 Cal.Rptr. 796, 484 P.2d 964].)

"Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in

granting or denying certification." (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435 [97 Cal.Rptr.2d 179, 2 P.3d 27].) Nevertheless, "we must examine the trial court's reasons for [granting] class certification." (*Id.* at p. 436; see also *Washington Mutual Bank v. Superior Court, supra,* 24 Cal.4th at p. 914.) In particular, we must consider whether the record contains substantial evidence to support the trial court's finding, as a certification ruling not supported by substantial evidence cannot stand. (*Linder, supra,* at pp. 435–436; see also *Richmond v. Dart Industries, Inc., supra,* 29 Cal.3d at p. 470.) A certification order may also be reversed if it is based on improper criteria or erroneous legal assumptions. (*Linder, supra,* at p. 435.) The certification question is "essentially a procedural one that does not ask whether an action is legally or factually meritorious." (*Id.* at pp. 439–440.)

### III. *The Trial Court's Ruling*

The trial court relied almost exclusively on a Ninth Circuit opinion, *Wolin v. Jaguar Land Rover North America LLC* (9th Cir. 2010) 617 F.3d 1168 (*Wolin*), when it granted Lee's motion for certification. In *Wolin*, the plaintiffs sued Land Rover for an alleged alignment geometry defect that caused tires to wear prematurely in Land Rover's LR3 vehicles. Land Rover issued a TSB indicating that the tires on certain vehicles may wear prematurely due to the vehicles' steering alignment geometry. (*Id.* at pp. 1170–1171.) The plaintiffs sought to certify two classes of LR3 owners, one in Michigan and one in Florida. They alleged claims for breach of warranty under the Michigan consumer protection act and the Florida Deceptive and Unfair Trade Practices Act. (*Wolin,* at p. 1171.)

The district court denied the class certification motions, concluding that the plaintiffs could not meet their burden to show that common issues predominated under rule 23 of the Federal Rules of Civil Procedure (28 U.S.C.). Among other things, the plaintiffs were unable to prove that a majority of potential class members suffered from the consequences of the alleged alignment defect. (*Wolin, supra,* 617 F.3d at p. 1171.) On review for abuse of discretion, the Ninth Circuit found that the complaints set forth questions of law or fact common to the class and that these questions predominated. (*Id.* at p. 1172.) Among them were issues regarding (1) whether the LR3's alignment geometry was defective; (2) whether Land Rover was aware of this defect; and (3) whether Land Rover concealed the nature of the defect.

Of particular relevance to this case, the Ninth Circuit also held that "proof of the manifestation of a defect is not a prerequisite to class certification." (*Wolin, supra,* 617 F.3d at p. 1173.) Thus, the district court erred when it concluded that certification was inappropriate because the plaintiffs failed to prove that the tires wore prematurely due to a defect. (*Ibid.*) According to the

Ninth Circuit panel, that question related to the merits of whether Land Rover violated consumer protection laws and did not overlap with the predominance test. The plaintiffs alleged "that the defect exists in the alignment geometry, not in the tires, that Land Rover failed to reveal material facts in violation of consumer protection laws, and that Land Rover was unjustly enriched when it sold a defective vehicle. All of these allegations are susceptible to proof by generalized evidence. Although individual factors may affect premature tire wear, they do not affect whether the vehicles were sold with an alignment defect." (*Ibid.*) As a result, plaintiffs' allegation of an alignment defect was sufficient, for class certification purposes, to satisfy the predominance test as to the four-year, 50,000-mile limited warranty, which covered " 'repairs required to correct defects in factory-supplied materials or factory workmanship . . . with the exception of tires.' " (*Id.* at pp. 1170, 1174.)

However, the court noted that the allegation of an alignment defect was not enough to satisfy the predominance test as to the separate warranty covering tire replacement and/or vehicle realignment in the event the tires exhibit " '[e]xcessive wear that is inconsistent with normal use' and 'caused by a manufacturing defect elsewhere on the vehicle.' " (*Wolin, supra,* 617 F.3d at pp. 1170, 1174.) "Whether each proposed class member's tires wore out, and whether they wore out prematurely and as a result of the alleged alignment defect, are individual causation and injury issues that could make class-wide adjudication inappropriate [as to the tire warranty]." (*Id.* at p. 1174.) "As to the existence of a defect in the vehicles, failure to disclose the defect, recovery pursuant to state consumer protection laws, and breach of the Limited Warranty, we hold that the district court erred when it required [the plaintiffs] to show that a majority of proposed class members' vehicles manifested the results of the defect." (*Ibid.*)

In its opposition to the motion for class certification, Honda relied on *Hicks v. Kaufman & Broad Home Corp.* (2001) 89 Cal.App.4th 908 [107 Cal.Rptr.2d 761] (*Hicks*), which held, "proof of breach of warranty does not require proof the product has malfunctioned but only that it contains an inherent defect which is substantially certain to result in malfunction during the useful life of the product." (*Id.* at p. 918.) Honda seized on this language in *Hicks* to argue that *Wolin* was contrary to California law.

Finding *Wolin* to be valid and "persuasive authority," the trial court dismissed *Hicks* on the ground that "[t]his portion of *Hicks* is a dictum made obsolete by our Supreme Court." According to the trial court, "[t]his cited portion of the *Hicks* decision . . . sought to reconcile the *Hicks* holding with the decision in *American Suzuki Motor Corp. v. Superior Court* (1995) 37 Cal.App.4th 1291, 1293 [44 Cal.Rptr.2d 526]. [¶] Our Supreme Court has disapproved of *American Suzuki*." We disagree with the trial court's characterization of *Hicks*. First, *Hicks* did not rely on *American Suzuki*. Indeed, the

*Hicks* court expressly distinguished *American Suzuki* in its analysis, writing that "*American Suzuki* and *Feinstein* [*v. Firestone Tire and Rubber Co.* (S.D.N.Y 1982) 535 F.Supp. 595] are distinguishable from the case at bench. Those implied warranty cases were not decided on the ground a defect must have resulted in the product malfunctioning in order to give rise to a suit for breach of warranty. Rather, they were decided on the ground that since there was no history of the products failing they were not, as a matter of law, defective." (*Hicks, supra,* 89 Cal.App.4th at pp. 922–923.) Moreover, we do not find this portion of *Hicks* to be dictum. Indeed, the *Hicks* court devoted almost seven pages to an analysis of this issue and it was central to the court's conclusion that common questions predominated. (*Id.* at pp. 916–923.)

## IV. *The Certification Order Was Based on an Erroneous Legal Assumption*

Having determined that *Hicks* is not "obsolete," we now consider whether to follow its holding that breach of warranty requires proof the product is substantially certain to malfunction during its useful life. In *Hicks*, the plaintiff homeowners appealed from the denial of their motion for class certification. (*Hicks, supra,* 89 Cal.App.4th at p. 911.) The plaintiffs sued a developer and general contractor for the cost of repairing or replacing defective concrete foundations under their homes. The plaintiffs alleged that the concrete slab foundations under their homes were inherently defective because they were constructed using Fibermesh, made from a type of plastic, rather than welded wire mesh. (*Id.* at p. 912.) The plaintiffs contended that cracks caused by loss of moisture, soil erosion or earthquakes were limited to a hairline width in foundations made with welded wire mesh while Fibermesh foundations exhibited much wider cracks which split the foundation into pieces and permitted moisture, dirt and insects to penetrate the floor. (*Ibid.*)

The plaintiffs brought suit for strict liability, negligence, and breach of express and implied warranties on behalf of a class of homeowners who purchased homes with Fibermesh foundations. (*Hicks, supra,* 89 Cal.App.4th at pp. 912–913.) The trial court denied class certification and dismissed the class allegations on two grounds: the members of the putative class were not reasonably ascertainable, and the causes of action lacked common issues of fact. (*Id.* at p. 913.)

On appeal, Division Seven of this court held that "[t]he trial court applied an improper criterion in determining ascertainability of the class. Manifest damage to a slab is not a 'precondition' for class membership. It is, if anything, an element in the proof of [the defendant's] liability and relates to the existence of common questions of law and fact, not ascertainability of the class." (*Hicks, supra,* 89 Cal.App.4th at p. 914.) The court then presented the

question on appeal as "whether malfunction is an element of a cause of action for breach of warranty," concluding that "proof of breach of warranty does not require proof the product has malfunctioned but only that it contains an inherent defect which is substantially certain to result in malfunction during the useful life of the product. The question whether an inherently defective product is presently functioning as warranted goes to the remedy for the breach, not proof of the breach itself." (*Id.* at pp. 917–918.) "We conclude, therefore, if plaintiffs prove their foundations contain an inherent defect which is substantially certain to result in malfunction during the useful life of the product they have established a breach of [the defendant's] express and implied warranties." (*Id.* at p. 923.)

The plaintiffs in *Hicks* presented a declaration from their expert, who concluded: " 'Without exception, the wire mesh has held cracks closely together and they rarely exceed hairline proportion. Fibermesh allows the cracks to separate, causing a loss of the interlock of the aggregate and in effect creating multiple slab pieces from what was to have been one slab.' " (*Hicks, supra*, 89 Cal.App.4th at p. 917.) The expert opined that slab replacement was necessary, regardless of whether the foundation had actually cracked, because environmental factors would cause it to crack later on. As a result, the court held that common questions of law and fact predominated with respect to the breach of warranty claims. (*Id.* at p. 916.)

Although the facts of this case more closely parallel the facts in *Wolin*, we find *Hicks* to be the better reasoned statement of law on this issue. (*Wolfe v. Dublin Unified School Dist.* (1997) 56 Cal.App.4th 126, 137 [65 Cal.Rptr.2d 280].) First and foremost, *Wolin* does not address California law. The Ninth Circuit in *Wolin* was instead presented with federal procedural law and Florida and Michigan substantive law. Of course, there would be no error if *Hicks* and *Wolin* reached the same conclusions. They do not. *Hicks* and *Wolin* are in agreement that proof of current manifestation of the defect is not necessary in a breach of warranty class action. However, like the court in *Hicks*, we do not find that to be the end of the inquiry. Just because the law does not require a current malfunction to prove breach of warranty does not mean it should not require proof of *any* malfunction, present or future. A breach of warranty cannot result if the product operates as it was intended to and does not malfunction during its useful life. (*Daugherty v. American Honda Motor Co., Inc.* (2006) 144 Cal.App.4th 824, 831–832 [51 Cal.Rptr.3d 118].) Accordingly, *Hicks* extends its holding to include the requirement that the party moving for class certification must provide substantial evidence of a defect that is substantially certain to result in malfunction during the useful life of the product. This is an issue that must be considered not only to determine the merits of a plaintiff's claim, but also in a class certification motion.

Because the trial court relied on *Wolin*, which does not require proof of a common defect that is substantially certain to manifest in a future malfunction, we conclude the trial court based its ruling on an erroneous legal assumption and that alone is sufficient grounds for reversal of the class certification order as to the breach of warranty claims. (*Fletcher v. Security Pacific National Bank* (1979) 23 Cal.3d 442 [153 Cal.Rptr. 28, 591 P.2d 51] [reversal and remand warranted where trial court erroneously held that an unfair trade practice class action required proof of each individual borrower's lack of knowledge]; *McAdams v. Monier, Inc.* (2010) 182 Cal.App.4th 174, 187 [105 Cal.Rptr.3d 704]; *Ticconi v. Blue Shield of California Life & Health Ins. Co.* (2008) 160 Cal.App.4th 528, 534 [72 Cal.Rptr.3d 888] [denial of motion to certify class reversed where trial court erroneously concluded that the defense of unclean hands was available in a UCL action based on the violation of Ins. Code, §§ 10113 and 10381.5]; see also *People v. Superior Court (Humberto S.)* (2008) 43 Cal.4th 737, 746 [76 Cal.Rptr.3d 276, 182 P.3d 600] ["[W]hen a trial court's decision rests on an error of law, that decision is an abuse of discretion."].)

## V. Common Questions of Law and Fact Do Not Predominate With Respect to the Causes of Action for Breach of Warranty

We also find that Lee's breach of warranty claims are not amenable to class treatment as the class is currently defined because individualized inquiries predominate over common issues. Lee asserts that each of the affected vehicles has the same defect (a faulty third gear due to a design defect), the same symptoms (grinding into gear, popping out of gear, and/or being difficult to shift into third gear) and the same remedy (replacement of the third gear set). Therefore, common questions include: (1) whether the specific class vehicles contain a defect; (2) whether the issues with the vehicles' transmissions is a defect or nonconformity that will substantially impair the use, enjoyment, safety, or value of the vehicle; (3) whether the failure and/or refusal to fully and adequately repair the defect constitutes a breach of the express manufacturer's warranty for the vehicle; (4) whether Honda has engaged in unfair or deceptive acts or practices in representing that the subject vehicles are of a particular standard, quality or grade; and (5) whether Honda should be enjoined from further engaging in unfair or deceptive acts or practices in representing the nature and extent of the defect and/or nonconformity related to the vehicles' transmission issues.

Merely repeating the ultimate facts to be determined, however, is not enough to establish that common issues predominate. "Plaintiffs' burden on moving for class certification . . . is not merely to show that some common issues exist, but, rather, to place substantial evidence in the record that common issues *predominate*." (*Lockheed Martin Corp. v. Superior Court*

(2003) 29 Cal.4th 1096, 1108 [131 Cal.Rptr.2d 1, 63 P.3d 913].) We find that Lee has not met this burden.

Here, the trial court certified a class composed of "[a]ll individuals in California who purchased or leased [the Acura models described in the TSB], who have not had the re-designed third gear set installed." In support of its certification motion, Lee presented evidence that this class bought or leased 19,470 "affected" vehicles. Of these, 715 or less than 4 percent of the class reported a problem with their third gear and 531 received a new third gear. As to the remaining 18,755 class members, Lee has presented no evidence that it is substantially certain their transmissions would exhibit third gear problems as required by *Hicks*. Unlike in *Hicks*, Lee did not submit expert testimony that opined there was an inherent defect and that it caused the product to malfunction or that it was substantially certain the product would malfunction as a result of the defect. Indeed, at least some, if not most, of the affected vehicles sold in 2002 to 2004 were outside of the four-year, 50,000-mile warranty period by the time Lee filed suit in 2008 and had not reported any third gear problems. The evidence presented by Lee in support of his certification motion shows that less than 4 percent of the vehicles in question reported warranty claims for third gear problems by August 2008. Since it is undisputed that Honda sold 594 of the 2003 Acura 3.2 CL models, 16,093 of the 2002 to 2006 Acura RSX models, 2,691 of the 2004 to 2007 Acura TL models and 92 of the 2008 Acura TL models, we can be fairly certain that some of these cars did not exhibit a third gear problem within the warranty period.

Despite relying on these numbers in his motion for certification, Lee now claims that they are "grossly understated" and that he can, with additional discovery, establish that many more class members encountered third gear problems than what is shown by Honda's records. Lee asserts that Honda's numbers are "meaningless" because it fails to include those class members who believe "it was just how the vehicle worked and lived with the defect" or those who made preliminary attempts to fix the problem but ultimately gave up and were not counted as a warranty claim in Honda's records. That is pure speculation. Lee had at least eight months to conduct discovery to support his class certification motion and does not contend that he was thwarted in his efforts. He makes no valid showing that he will be able to identify some vast pool of class members who suffered the defect in silence.

Here, we are presented with a class composed of 715 members who experienced third gear problems and reported it, and 18,755 other members who experienced no third gear problems, who might experience third gear problems in the future and who suffered in silence. The class also is comprised of members whose warranties have run and those who are still

within the warranty period. This class, as it is currently defined, presents too many individualized issues for class treatment.

We are further presented with variances in what caused the third gear problems, whether by design defect, abuse, misuse or drag racing. The TSB states that the "probable cause" of the problem may be attributed to a "faulty 3rd gear synchronizer or 3–4 shift sleeve." An internal Honda communication also suggests a design-related problem.[2] Lee contends that these two pieces of evidence constitute substantial evidence of a design defect. We disagree. A TSB is not and cannot fairly be construed by a trial court as an admission of a design or other defect, because TSB's are routinely issued to dealers to help diagnose and repair typical complaints. If a TSB standing alone were sufficient to show a product liability case is proper for class action treatment, then there would be a class action every time a TSB is issued. Moreover, neither the TSB in this case nor the internal communication by Honda states the synchronizer or shift sleeve was the common cause of every complaint.

Honda presented evidence that at least some of the 715 members who reported a third gear problem were denied warranty coverage as a result of obvious abuse, misuse or aftermarket alterations to the vehicle. The warranty expressly excludes the failure of any part due to "[a]buse, misuse, accidental damage, or acts of nature [and use] of the vehicle in competition or racing events." Honda's records showed that one class member "admitted to racing his vehicle on a drag strip" and his vehicle showed it had been "over rev[ved] on numerous occasions [to] over 10K rpm." An inspection of another vehicle indicated abuse where "3 shift forks were broken and 1 was cracked," "[t]hey also found metal internally everywhere" and other parts were "worn" or "failed." Other class members were denied warranty coverage on similar grounds. In short, whether each proposed class member's third gear malfunctioned, if it will malfunction, how it malfunctioned and why it malfunctioned are individual questions not amenable to common proof. Lee has failed to demonstrate by substantial evidence that common questions of law and fact predominate as to the class certified. (See, e.g., *Ali v. U.S.A. Cab Ltd.* (2009) 176 Cal.App.4th 1333, 1350 [98 Cal.Rptr.3d 568] ["When variations in proof of harm require individualized evidence, the requisite community of interest is missing and class certification is improper."].)

---

[2] This document has been filed under seal with this court, apparently because it contains Honda's confidential information or trade secrets. Although we normally do not discuss evidence filed under seal, Lee's counsel identified the document at oral argument without objection from Honda. Accordingly, we refer to it generally in this opinion.

## VI. *Common Questions of Law and Fact Do Not Predominate With Respect to the UCL Cause of Action*

We similarly find common issues do not predominate with respect to Lee's UCL claim.[3] In his complaint, Lee alleged that Honda told Acura owners that the vehicles were operating normally and as designed, even though it knew or should have known the problems with the third gear were not normal and were caused by a mechanical defect. Alternatively, Lee alleged that Honda told customers it could not reproduce the gear shifting problems. According to Lee, "[t]he failure to properly advise Plaintiff and the class members that the transmission issues constitute a defect that should be repaired under warranty, constitutes unfair business practices, as defined by Business and Professions Code § 17200 et seq."

However, Lee presents no substantial evidence that his UCL claim is subject to common proof. He does not contend that Honda or its dealers made standard or scripted representations to class members. Instead, the evidence submitted by Lee to support his certification motion demonstrates how variable the representations made to class members were. Lee himself states, "the dealership told me that since the vehicle was new, with more time, the problem would go away." He was also told the dealer could not replicate the problem and that it was operating as designed. Kathi Cardin was told "the problem was characteristic of the Vehicle and that there was nothing wrong with the Vehicle." She was also told "there was nothing they could do to fix the problem." George Braue was told by service technicians that they could not duplicate the problem.[4] Steve Patterson, on the other hand, was told there was a TSB that advised technicians to change the transmission fluid. Given the wide variance in what class members were told even among the small sample provided by Lee, we find Lee's UCL cause of action is not subject to common proof.

We also note that the class certified by the trial court—all individuals who leased or purchased the affected Acura models in California without the redesigned third gear—may be overbroad since it appears undisputed that many class members were never exposed to the alleged misrepresentations because they never contacted Honda or its dealers about a third gear problem. (*Pfizer Inc. v. Superior Court* (2010) 182 Cal.App.4th 622, 631–632 [105 Cal.Rptr.3d 795].)

---

[3] Lee's UCL claim is subject to the same class action requirements as his breach of warranty claims. (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 313 [93 Cal.Rptr.3d 559, 207 P.3d 20].)

[4] It is unclear whether Braue is even a member of the class since he admits that Honda "agreed to rebuild the transmission by replacing the second and third gears and the corresponding synchros."

## DISPOSITION

The petition for writ of mandate is granted. The trial court is ordered to vacate its order certifying the class and to enter an order denying the current motion without prejudice for the court to consider a properly constituted class. American Honda Motor Co., Inc., is awarded its costs in this proceeding.

Rubin, J., and Grimes, J., concurred.