**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JASON M. YAMADA, D.D.S., on behalf of himself and others similarly situated,<br><br>*Plaintiff-Appellee*,<br><br>v.<br><br>NOBEL BIOCARE HOLDING AG; NOBEL BIOCARE AB; NOBEL BIOCARE USA, LLC,<br><br>*Defendants-Appellants*. | No. 14-55263<br><br>D.C. No. 2:10-cv-04849-MWF-PLA<br><br>ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Argued and Submitted
February 12, 2016—Pasadena, California

Filed April 20, 2016
Amended June 9, 2016

Before: Marsha S. Berzon and John B. Owens, Circuit
Judges, and Algenon L. Marbley,* District Judge.

Opinion by Judge Marbley

---

* The Honorable Algenon L. Marbley, District Judge for the U.S.
District Court for the Southern District of Ohio, sitting by designation.

## SUMMARY[**]

### Attorneys' Fees

The panel vacated the district court's order awarding class counsel more than $2.3 million in attorneys' fees, which the district court awarded based on the terms of a settlement agreement, California Code of Civil Procedure § 1021 under the substantial benefit theory, and the private attorney general theory under California Code of Civil Procedure § 1021.5; and remanded.

Dr. Jason Yamada, a dentist, filed a class action complaint against defendants Nobel Biocare AG, and related entities, alleging defects in the NobelDirect implants.

The lodestar method (calculated by multiplying the number of reasonable hours the prevailing party expended by a reasonable hourly rate for the region and for the attorneys' experience) may be used in certain class actions to calculate attorneys' fees. The court may adjust the lodestar figure by an appropriate upward or negative multiplier reflecting a host of "reasonableness" factors.

The panel held that defendants did not waive their due process argument. The panel also held that the district court's use over defendants' objection of ex parte, in camera submissions to support its fee order violated defendants' due process rights. On remand, the panel held that the district court must allow defendants access to timesheets, appropriately redacted to remove privileged information, so

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

they can inspect them and present whatever objections that they might have concerning the fairness and reasonableness of plaintiffs' fee request.

The panel held that the district court's discount of the lodestar for lack of success was not erroneous because the district court concisely and clearly explained its reduction of the lodestar, and because there was sufficient support for its finding that plaintiffs' claims were related to a common goal. The panel also held that the district court's cross-check of the lodestar was entirely discretionary where, as here, classwide benefits were not easily monetized.

## COUNSEL

Eric Y. Kizirian (argued) and Michael K. Grimaldi, Lewis Brisbois Bisgaard & Smith LLP, Los Angeles, California; Jeffry A. Miller, Lewis Brisbois Bisgaard & Smith LLP, San Diego, California, for Defendants-Appellants.

Myron Moskovitz (argued), Piedmont, California; William M. Audet, and Jonas P. Mann, Audet & Partners, LLP, San Francisco, California, for Plaintiff-Appellee.

**ORDER**

The opinion filed on April 20, 2016 and appearing at 2016 WL 1579705 is hereby amended. The amended opinion will be filed concurrently with this order.

The opinion is amended as follows:

On page 13, line 6 <normally> has been added. The sentence now reads: <Accordingly, we have previously held that an opposing party normally has a right to see the timesheets on which a district court relied in issuing a fee award.>

On page 15, line 5 <Here> has been added. The sentence now reads <Here, the Due Process Clause requires that opposing counsel have access to the timesheets relied on to support the fee order.>

On page 15, footnote 7 has been added. Footnote 7 reads <This case is different from *United States v. Eyraud*, in which we held that the district court's denial of a defendant's request for access to the original billing invoices used for restitution purposes to determine compensable attorneys' fees did not violate her right to Due Process. 809 F.3d 462, 471 (9th Cir. 2015). Eyraud "had access to the [victim's] law firm's declaration describing the work it performed relating to Eyraud's fraud and the invoice summaries listing the amount of time that work took." *Id.* It was only to verify that those disclosed "documents accurately reflected the pertinent information contained in the privileged billing records," the court examined the original in camera. *Id.* The court then confirmed that the summaries relating to work and time spent that had been extracted from the privileged material were accurate, i.e., "simply corroborative of what counsel already had seen." *Id.* With the accurate summaries

in hand, we held that Eyraud was "able to challenge the legal basis for the court's order." *Id.* Thus, she had been "afforded adequate notice [of the facts] and a meaningful opportunity to be heard." *Id.* By contrast, here the court made an independent determination of appropriate fees, but it did not reveal the actual basis of its ruling or provide Nobel with access to the information used to reach that ruling. Thus, unlike Eyraud, Nobel was denied a meaningful opportunity to review and to litigate the merits of the award.>

The parties may not file petitions for rehearing or rehearing en banc in response to the amended opinion. The mandate shall issue forthwith.

**OPINION**

MARBLEY, District Judge:

Defendants-Appellants Nobel Biocare Holding AG, Nobel Biocare AB, and Nobel Biocare USA, LLC (collectively, "Nobel") appeal the district court's order awarding class counsel more than $2.3 million in attorneys' fees. Defendants appeal on four bases. First, they contend that the district court violated their due process rights by basing its fee order on an ex parte, in camera review of timesheets that they could not review or challenge. Second, they argue that the district court did not adequately discount the lodestar. Third, they assert that the district court's cross-check of the lodestar was flawed. Finally, they submit that the district court erred in awarding a multiplier based solely on the contingent risk factor of the litigation. Plaintiffs argue that Defendants have waived the first argument by failing to raise the issue timely or adequately.

We find that Defendants have not waived their due process argument, and we vacate the district court's fee order and remand with instructions.

## *BACKGROUND*

Named Plaintiff Dr. Jason Yamada, DDS is a Torrance, California-based dentist specializing in tooth implants. Dr. Yamada attended a promotional symposium in 2004 hosted by Nobel featuring their NobelDirect dental implants. Following the symposium, Dr. Yamada implanted dozens of NobelDirect implants into his patients but noticed that the implants failed at a rate he deemed unusually high. Just over a year after the implant's launch, two Swedish professors at the University of Gothenburg warned that the implants were causing bone loss, and they urged Nobel to withdraw the implants from the market. In response to those allegations, Nobel contacted the Swedish Medical Products Agency ("SMPA"), a government agency akin to the United States Food and Drug Administration, to investigate. In February of 2008, the SMPA formally closed its investigation with no adverse findings as to the implants' safety or efficacy. Nevertheless, at least a dozen of Dr. Yamada's patients' NobelDirect implants failed, which necessitated explant surgery—that is, removal of the implants—oral reconstruction, implant replacement, and continued monitoring. Dr. Yamada performed those necessary reparative surgeries at his own expense.

On June 30, 2010, Dr. Yamada filed a class action complaint against Nobel alleging a defect in the NobelDirect implant. The complaint alleged causes of action for declaratory relief, implied indemnity, breach of express and warranty, and a violation of California Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200, *et seq*.

On November 5, 2010, Nobel filed a motion to dismiss Dr. Yamada's first amended complaint. On January 20, 2011, the district court (the Honorable Jacqueline Nguyen) denied the motion as to all but the implied indemnity claim, which it dismissed with prejudice. That same day, the district court ordered Dr. Yamada to file his motion for class certification by February 28, 2011. Meanwhile, the parties filed their preliminary report under Rule 26(f) of the Federal Rules of Civil Procedure. The report was filed prior to discovery, and it noted that Defendants had sole possession of the vast majority of key documents in the litigation. Plaintiffs sought compensatory damages (both past and projected loss), restitution, and declaratory relief to protect the class, essentially a form of indemnity. Projected class-wide damages were estimated at $450 million and were calculated as follows: $8 million for the price of the 20,000[1] failed implants, representing an estimated 20% failure rate out of 100,000 total implants at $400 per implant; $70–100 million for the surgical replacement of the 20,000 implants at $3,500 per procedure; $60 million to repair or restore teeth adjacent to the implant; and $325 million for monitoring and medical costs.

On August 12, 2011, the district court certified a nationwide class and appointed Dr. Yamada class representative. On May 11, 2012, the case was reassigned to the Honorable Michael Fitzgerald. On June 11, 2012, Nobel moved both for summary judgment as to all outstanding claims and for reconsideration of class certification or, alternatively, decertification of the class, arguing that two

---

[1] The report reaches the figure of $60 million by estimating 3,000 procedures at a cost of $20,000 each. This equation is likely mistaken. 3,000 dollars per procedure for 20,000 procedures (the estimated number of failed implants) is the likelier equation.

recently decided cases materially changed the applicable law. The district court denied Nobel's motion for summary judgment but ordered supplemental briefing on the motion for reconsideration, finding well taken Defendants' argument that *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), and *American Honda Motor Co. v. Superior Court*, 199 Cal. App. 4th 1367 (2011), represented material changes of law under Civil Local Rule 7-18.[2] *Mazza* held that "California law may only be used on a classwide basis if 'the interests of other states are not found to outweigh California's interest in having its law applied.'" 666 F.3d at 590 (quoting *Wash. Mut. Bank v. Super. Ct.*, 24 Cal. 4th 906, 921 (2001)). In making that determination, *Mazza* requires courts to conduct "a three-step governmental interest test."[3]

---

[2] Civil Local Rule 7-18 provides:

> A motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision. No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion.

[3] First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.

*Id.* The district court conducted the test and ultimately denied Defendants' motion for reconsideration under *Mazza* due to, among other reasons, "the overwhelming connections between California and [Defendants'] conduct relevant to [the] case."

The material change under *American Honda* concerned causation. In *American Honda*, the California Court of Appeal stated that for a California breach of warranty claim to proceed, the movant for class certification must provide "substantial evidence of a defect that is substantially certain to result in malfunction during the useful life of the product." 199 Cal. App. 4th at 1375. To do that, the movant must demonstrate through expert testimony that "there was an inherent defect and that it caused the product to malfunction or that it was substantially certain the product would malfunction as a result of the defect." *Id.* at 1377. The district court found that the record demonstrated hundreds of potential causes for implant failures, and that the cause of any

---

> Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.

> Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*Mazza*, 666 F.3d at 590 (quoting *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 81–82 (2010)).

particular failure was uncertain. Accordingly, the district court granted in part Defendants' motion and decertified the class as to the claims for declaratory relief, breach of express warranty, and breach of implied warranty. The court left standing the claims for unfair and fraudulent business practices under California's UCL.

The parties settled the remaining claims. On May 21, 2013, the district court issued an order granting preliminary approval of the settlement. The settlement agreement provided compensation for class members as follows: all implantees whose NobelDirect implants failed before the effective date of the settlement agreement and who had not yet received a replacement for the implants under Nobel's warranty plan would receive either compensation for the actual amount paid for the failed implants or, if Nobel had no record of the actual amount paid, $450.00 for each failed implant; and all implantees whose NobelDirect implants failed after the effective date of the settlement agreement would receive either reimbursement of the actual amount paid or any single replacement Nobel implant.

The settlement enhanced Nobel's original warranty. Before the settlement, Nobel's warranty was for 10 years and provided only for another NobelDirect implant. Further, the original warranty gave Nobel the right to deny claims if they suspected that the implant failure was caused by patient misuse, and the burden was on the patient to prove otherwise. The prior warranty also required the patient to return the extracted implant to recover. The settlement provided class members a lifetime warranty, and those who experienced past failures could recover merely by signing a declaration attesting that to their knowledge, the patient was not the exclusive cause of the failure.

On September 8, 2013, class counsel filed two motions: one for attorneys' fees and litigation expenses and the other for approval of the class action settlement. In the motion for attorneys' fees, counsel requested $4,156,631.85 in fees and $223,989.06 in expenses. The fee request was based on a $2,771,087.90 lodestar and a multiplier of 1.5 to account for the contingent nature of the litigation.

Nobel opposed class counsel's motion for attorneys' fees. At a hearing on the motion, the district court ruled that the summary nature of the time records and declarations provided by class counsel prevented the court from adequately evaluating whether the number of hours expended on the litigation were reasonable or duplicative. To remedy that defect, the court ordered class counsel to provide unredacted time records under seal and in camera to the court only, after which the court would determine whether copies of the time records should be redacted and provided to Nobel's counsel. Nobel asked for copies of the records, but the district court denied the request, subject to reconsideration.

On November 4, 2013, class counsel filed the timesheets under seal for the district court's in camera review. After reviewing the timesheets, the court held a hearing on January 14, 2014. At that hearing, Nobel renewed its request to examine the timesheets submitted by class counsel. The district court overruled the objection, stating:

> I think that [counsel for Nobel] are grossly overstating [their] ability to dictate to someone who managed his own law firm for close to 20 years to read through these bills and make a determination on [them]. Every month I had to send out bills to exceedingly demanding clients, either

corporate clients or insurance companies and make sure that they would be paid, and I have the ability to look at that and say would this pass muster with—you know, with an insurance company? And, obviously, I think the order speaks for itself. The alternative is to force everybody to go through and decide what is privileged and what's not and then what—for [them] to advocate on the basis of what's left over and I just don't think that's a good use of anybody's time.

Shortly after the hearing, the district court entered an order awarding fees to class counsel on three grounds: the terms of the settlement agreement; California Code of Civil Procedure § 1021 under the substantial benefit theory;[4] and the private attorney general theory under California Code of Civil Procedure § 1021.5.[5]

---

[4] The substantial benefit theory provides for attorneys' fees in suits that: (1) invoke the court's equitable powers; (2) are commenced and maintained as a representative action; and (3) result in a disposition that confers substantial benefits (either pecuniary or nonpecuniary) upon the persons represented. *Coal. for L.A. Cty. Planning etc. Interest v. Bd. of Supervisors*, 76 Cal. App. 3d 241, 248 (1977).

[5] Section 1021.5 provides that

a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the

The court deemed it necessary, however, to reduce the requested fees substantially due to vagueness in time entries, improper inclusion of clerical work  and other work not properly billed for, inflation of hours due to rounding up of billing in large time increments, and the use of block billing. Nobel timely appealed the final fee award to this court.

## *STANDARD OF REVIEW*

We review a district court's award of attorneys' fees for abuse of discretion. *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 621 (9th Cir. 1993) (quoting *Lindy  Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir. 1993)). A district court abuses its discretion when "its decision is based on an erroneous conclusion of law or if the record contains no evidence on which it rationally could have based its decision." *In  re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) (citations omitted).

## *DISCUSSION*

### A.  Waiver

Generally, an appellate court will not hear an issue raised for the first time on  appeal. *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 515 (9th Cir. 1992). There is "no 'bright line rule'. . . to determine whether a matter has been properly raised below." *Id.* The standard "is that the argument must be raised sufficiently for the trial court to rule on it." *Id.* (quoting *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957 (9th Cir. 1989)). Accordingly, when a party takes a position and the district court  rules on it, there is no waiver. *See W. Watersheds*

---

award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

*Project v. U.S. Dep't of Interior*, 677 F.3d 922, 925 (9th Cir. 2012) (explaining that there is "no waiver if the issue was raised, the party took a position, and the district court ruled on it").

Plaintiffs contend that Defendants waived their due process argument by failing to raise the issue until after the briefing on the matter of attorneys' fees was complete. This argument is specious. It was not until the first fee hearing, two weeks after completion of briefing, that the issue first arose. Defendants asked to view the timesheets at that hearing, saying: "[W]e respectfully submit we should see [the timesheets], your honor, though I understand there are privilege[] concerns and that's been handled in other cases by way of redaction of confidential information." Class counsel objected to Defendants' request for access even to redacted timesheets, after which the court indicated that it "might direct that certain redactions be made [to the timesheets] and that those be provided . . . pursuant to a protective order" once the court had "a better sense of just what they are and what they say, [and] how detailed they are." Not until one day before the second fee hearing, held on January 14, 2014, did the district court first decide that it would base the fee order entirely on the in camera timesheets. Defendants renewed their request to examine the timesheets at that hearing. The district court responded by telling defense counsel that they overstated the impact of their anticipated advocacy. The district court's written order also addressed Defendants' objection:

> At the hearing held on January 14, 2014, defense counsel objected to the fact that he has not had an opportunity to review Class Counsel's time records. As indicated above, Class Counsel did not provide time records to Defendants in the first instance due to

concerns that the records contained privileged information. In light of the Court's "independent obligation to ensure that the award . . . is reasonable," [citation], this court found that a more efficient use of time and resources was to review the records *in camera*, as opposed to requiring Class Counsel to redact the time records and provide a copy to Defendants.

The record demonstrates that Defendants raised the issue with sufficient specificity and vigor. The parties took positions on the issue of Nobel's access to the timesheets, the basis for this appeal, and the district court ruled on it. Defendants did not waive their argument.

## B. Due Process

A district court abuses its broad discretion in awarding attorneys' fees when it makes an error of law. *Mercury Interactive*, 618 F.3d at 993 (citing *Koon v. United States*, 518 U.S. 81, 100 (1996)). We find such error here: the district court's use over Defendants' objection of ex parte, in camera submissions to support its fee order violated Defendants' due process rights.

Our adversarial system of justice "is premised on the well-tested principle that truth—as well as fairness—is best discovered by powerful statements on both sides of the question." *Penson v. Ohio*, 488 U.S. 75, 84 (1988) (citation omitted). Accordingly, we have previously held that an opposing party normally has a right to see the timesheets on which a district court relied in issuing a fee award.

In *Intel Corp.*, we vacated a district court's order awarding attorneys' fees due in part to the fact that the

district court did not make available to opposing counsel the timesheets it used to support the fee order. 6 F.3d at 623. We declared that "[u]nder our adversary system, [opposing counsel is] *entitled* to see just what was charged and why," and that opposing counsel has a "*need* and *right* to peruse and parse [the] fee demand." *Id.* (emphases added). *MGIC Indemnity Corp. v. Weisman* similarly concerned a fee order based on ex parte, in camera submissions. *See* 803 F.2d 500, 505 (9th Cir. 1986). We remanded the matter to the district court to give opposing counsel an opportunity to inspect the timesheets and challenge the reasonableness of the fee award. *Id.*

Plaintiffs argue that *Intel* and *MGIC* are distinguishable because those fee orders were issued without explanation. In *Intel*, the district court "merely awarded the fees without elaboration," having made "no findings that the hours expended were reasonable [or] that the hourly rates were customary." 6 F.3d at 623. In *MGIC*, the district court provided "[n]o reason . . . why the timesheets should not have been made available to [opposing counsel] and [opposing counsel] given the opportunity to challenge them." 803 F.2d at 505. Here, on the other hand, the district court issued a detailed, 33-page order evincing thoughtful and well- informed consideration of the submissions. And the court offered a reason why it refused Defendants' access to the documents: the court found "a more efficient use of time and resources was to review the records *in camera*, as opposed to requiring Class Counsel to redact the time records and provide a copy to Defendants." So the question is whether judicial efficiency may eclipse Defendants'

fundamental right to inspect and challenge the documents. It may not.**[6]**

"[W]hen a judge constructs a process for setting fees, the process must contain at least the procedural minima that the Due Process Clause requires." *In re Nineteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 614 (1st Cir. 1992). Here, the Due Process Clause requires that opposing counsel have access to the timesheets relied on to support the fee order.[7] The district

---

**[6]** The parties argue extensively regarding the application of *Concepcion v. Amscan Holdings*, 223 Cal. App. 4th 1309 (2014), to the due process question in this case. Although informative, Concepcion does not control the question, for two reasons: (1) the question at issue is a procedural one, which, under Erie Railroad Co. v. Tomkins, 304 U.S. 64 (1938), should be decided under federal law; and, perhaps more importantly, (2) Defendants have raised a federal due process challenge to the district court's ex parte review procedure. What constitutes a federal due process violation is a question of federal, not state, substantive law. Accordingly, we do not discuss Concepcion here, other than to say that it supports Defendants' contention that the in camera procedure implemented here was a violation of their due process rights.

[7] This case is different from *United States v. Eyraud*, in which we held that the district court's denial of a defendant's request for access to the original billing invoices used for restitution purposes to determine compensable attorneys' fees did not violate her right to Due Process. 809 F.3d 462, 471 (9th Cir. 2015). Eyraud "had access to the [victim's] law firm's declaration describing the work it performed relating to Eyraud's fraud and the invoice summaries listing the amount of time that work took." *Id.* It was only to verify that those disclosed "documents accurately reflected the pertinent information contained in the privileged billing records," the court examined the original in camera. *Id.* The court then confirmed that the summaries relating to work and time spent that had been extracted from the privileged material were accurate, i.e., "simply corroborative of what counsel already had seen." *Id.* With the accurate summaries in hand, we held that Eyraud was "able to challenge the legal basis for the court's order." *Id.* Thus, she had been "afforded

court abused its discretion by denying Defendants such access.

On remand, the district court must allow Defendants access to the timesheets, appropriately redacted to remove privileged information, so they can inspect them and present whatever objections they might have concerning the fairness and reasonableness of Plaintiffs' fee request. Plaintiffs must then be allowed to respond to Defendants' objections and Defendants must be granted an opportunity to reply. The district court will then decide the appropriate fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983).

Vacating the fee order obviates the need for us to reach the merits of Defendants' remaining claims. In the interest of efficient eventual resolution of this dispute, however, we further hold as follows.

## C. Discount of Lodestar

Attorneys' fees and costs may be awarded in a certified class action when authorized by law or the parties' agreement. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011); Fed. R. Civ. P. 23(h). The "lodestar method" is appropriate in class actions where the relief sought and obtained is not easily monetized, ensuring compensation for counsel who undertake socially beneficial litigation. *Id.* "The lodestar figure is calculated by multiplying the number of hours the prevailing party

---

adequate notice [of the facts] and a meaningful opportunity to be heard." *Id.* By contrast, here the court made an independent determination of appropriate fees, but it did not reveal the actual basis of its ruling or provide Nobel with access to the information used to reach that ruling. Thus, unlike Eyraud, Nobel was denied a meaningful opportunity to review and to litigate the merits of the award.

reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Id.* Although the lodestar figure is "presumptively reasonable," *Cunningham v. Cty. of L.A.*, 879 F.2d 481, 488 (9th Cir. 1988), "the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment,'" *In re Bluetooth*, 654 F.3d at 941–42 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)). Of those factors, a party's success in the litigation is the "most critical." *Hensley*, 461 U.S. at 436.

Defendants argue that the district court made two dispositive errors: it (1) gave inadequate weight to what it acknowledged was class counsel's limited success; and (2) compounded the mistake by assuming that Plaintiffs' five claims were different legal theories addressing the same alleged violation.

As to Defendants' first argument, *Hensley* requires the district court to provide "a concise but clear explanation of its reasons for the fee award." 461 U.S. at 437. *Hensley* further states that "[w]hen an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." *Id.* Here, the district court did just that. It reduced the lodestar by 20% because of class counsel's success on only the UCL claim, citing *Hamed v. Macy's West Stores, Inc.*, No. 10-2790 JCS, 2011 WL 5183856, at *7 (N.D. Cal. Oct. 31, 2011). In *Hamed*, the district court reduced a fee award by 10%

because the plaintiff had succeeded on only one of five original claims. *Id.*

As to Defendants' second argument, the district court fairly characterized Plaintiffs' claims as different theories in pursuit of the same objective. *Hensley* provides that the hours spent on unsuccessful claims should be excluded "[w]here the plaintiff has failed to prevail on a claim that is distinct *in all respects* from his successful claims." 461 U.S. at 440 (emphasis added); *see Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 827 (9th Cir. 2009) ("[W]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have [her] attorney's fee reduced simply because the trial court did not adopt each contention raised." (alterations omitted) (quoting *Hogar v. Cmty. Dev. Comm'n of Escondido*, 157 Cal. App. 4th 1358, 1369 (2007))). Here, all of the relief Plaintiffs sought was for those harmed by Defendants' dental implants, which relief Plaintiffs received.

Defendants argue that *Winterrowd* is distinguishable because the plaintiffs there obtained 100% of the relief originally sought. This is true but unpersuasive for three reasons. First, Plaintiffs here filed their complaint when many of the key documents in discovery were in Defendants' sole possession. Plaintiffs did not have access to some documents until after the case's Rule 26 scheduling conference. This circumstance is unlike that in *Winterrowd*, where the complaint concerned breach of a severance contract. *See* 556 F.3d at 818. Plaintiffs here filed their complaint while somewhat in the dark, while the *Winterrowd* plaintiffs filed theirs when aware of both the contract and the operative facts concerning its breach.

Second, it was easier to determine the amount of recovery in *Winterrowd* and indeed the damages were ultimately calculated to the cent: $288,240.56. *Id.* The relief here is

difficult to monetize because it includes injunctive relief and intangible benefits, including the peace of mind that comes with the enhanced warranty and streamlined claims process provided by the settlement.

Third, all but one of Plaintiffs' original claims here were frustrated by intervening changes in law announced after Plaintiffs filed the complaint.

Because the district court concisely and clearly explained its reduction of the lodestar, and because there was sufficient support for its finding that Plaintiffs' claims were related to a common goal, the district court's discount of the lodestar for lack of success was not erroneous.

## D. Cross-Check of Lodestar

Defendants argue that the district court's cross-check of the lodestar was flawed because its valuation of the settlement was based on an unrealistically high estimated implant failure rate. Purporting to quote our holding in *In re Bluetooth*, Defendants further argue that "the district court *must* guard against an unreasonable result by cross-checking its calculations against a second method."

We agree that the district court likely overstated its monetary valuation of the settlement. But where, as here, classwide benefits are not easily monetized, a cross-check is entirely discretionary. Defendants' argument to the contrary is either mistaken or a deliberate misrepresentation of the law. *In re Bluetooth* in fact provides that "even though the lodestar method may be a perfectly appropriate method of fee calculation, we have also *encouraged* courts to guard against an unreasonable result by cross-checking their calculations against a second method." 654 F.3d at 944 (emphasis added). California courts agree. *See In re*

*Consumer Privacy Cases*, 175 Cal. App. 4th 545, 557 (2009) ("While the court has discretion to [conduct a cross-check] where appropriate, it is not required [to do so]."); *Ramos v. Countrywide Home Loans, Inc.*, 82 Cal. App. 4th 615, 628 (2000); *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 49–50 (2000).

## *CONCLUSION*

We **VACATE** the fee order and **REMAND** this matter to the district court for further proceedings. Class counsel will submit their timesheets to the district court and may propose that certain information is privileged. The district court will then determine what, if any, information is privileged. After the district court makes its privilege determination, class counsel will then file redacted timesheets that comply with the district court's determination. Counsel for Defendants will then have an opportunity to submit arguments as to the reasonableness of the submission. Plaintiffs will then have an opportunity to respond before the district court renders its decision concerning fees, and Defendants will have an opportunity to reply.

**VACATED AND REMANDED.**